UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| HATEM ABD EL NABI ABD RABO,<br><br>                    Plaintiff,<br><br>          -against-<br><br>RAINBOW USA, INC., RAINBOW APPAREL<br>DISTRIBUTION CENTER CORP., JACQUES<br>SALAMA, ADIN GOLDBERG and HAZEM<br>YOUSEF,<br><br>                    Defendants. | Case No. 17-cv-2689 (ILG) (RLM) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022
Telephone: (212) 583-9600

Attorneys for Defendants

*Of Counsel:*

A. Michael Weber
Houston A. Stokes

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT..................................................................................... 1

STATEMENT OF FACTS............................................................................................ 2

    A.    Rainbow ........................................................................................... 2

    B.    Mr. Salama, Mr. Yousef and Mr. Goldberg........................................... 2

    C.    Plaintiff's Employment At Rainbow ..................................................... 3

        1.    Rainbow Repeatedly Loans Money to Plaintiff.......................... 5

        2.    Union Members Repeatedly Complain About Plaintiff.................. 6

        3.    Rainbow Store Managers Repeatedly Complain About Plaintiff.... 6

        4.    Plaintiff Acts Insubordinately Towards Mr. Salama ................... 8

            a.    Plaintiff Fails to Staff His Store................................ 8

            b.    Plaintiff Shows Up At Headquarters Without Permission........... 9

            c.    Mr. Salama Can No Longer Work With Plaintiff...................... 10

        5.    Plaintiff Acts Insubordinately Towards Mr. Yousef.................... 11

        6.    Rainbow Decides to Terminate Plaintiff on June 22, 2015 .......... 12

        7.    Rainbow Grants Plaintiff's FMLA Leave Request...................... 14

        8.    Rainbow Notifies Plaintiff of the June 22, 2015 Termination
              Decision ........................................................................ 16

ARGUMENT ............................................................................................................ 17

I.      LEGAL STANDARD........................................................................................ 17

II.     PLAINTIFF'S FMLA INTERFERENCE CLAIM FAILS ............................................ 18

    A.    Legal Standard For FMLA Interference ............................................... 18

    B.    Plaintiff Admits That Rainbow Did Not Deny Him FMLA Leave ................... 18

    C.    Plaintiff's FMLA Interference Claim Against the Individual Defendants
        Fails Because The Individual Defendants Did Not Exercise Control Over
        Plaintiff's FMLA Rights .................................................................... 19

III.    PLAINTIFF'S FMLA RETALIATION CLAIM FAILS ............................................. 20

    A.    Legal Standard For FMLA Retaliation ............................................... 20

    B.    Rainbow Decided To Terminate Plaintiff Before Plaintiff Requested
        FMLA Leave.................................................................................. 21

**TABLE OF CONTENTS**
**(continued)**

Page

C. Plaintiff Cannot Establish a Causal Connection Between His Request For FMLA Leave and Rainbow's Decision To Terminate Him ................................ 22

D. Rainbow Had a Legitimate Reason To Terminate Plaintiff and There Is No Evidence of Pretext ................................................................................................ 23

IV. PLAINTIFF'S NYCHRL DISABILITY DISCRIMINATION CLAIM FAILS ............. 24

A. Legal Standard for NYCHRL Disability Discrimination .................................... 24

B. Plaintiff Admits That He Is Not Disabled and Rainbow Did Not Terminate Him Because of His Alleged Disability ................................................................ 24

C. Rainbow Had a Legitimate Reason To Terminate Plaintiff and There Is No Evidence of Pretext ................................................................................................ 26

V. PLAINTIFF'S AIDING & ABETTING CLAIM FAILS ................................................. 26

VI. PLAINTIFF'S EMPLOYER LIABILITY CLAIM FAILS ............................................. 27

CONCLUSION ...................................................................................................................... 28

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Achille v. Chestnut Ridge Transp., Inc.*,
    584 Fed. Appx. 20 (2d Cir. 2014) .......................................................................18

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ..............................................................................................17

*Bailey v Brooklyn Hosp. Ctr.*,
    2017 NY Slip Op 30013(U), 2017 N.Y. Misc. LEXIS 24 (N.Y. Sup. Ct., Jan.
    4, 2017) ...........................................................................................................27, 28

*Best v. Drugs*,
    2017 WL 218251 (S.D.N.Y. Jan. 11, 2017) .........................................................25

*Brower v. Continental Airlines, Inc.*,
    62 F.Supp.2d 896 (E.D.N.Y. 1999) ......................................................................24

*Brown v. City of New York*,
    622 F. App'x 19 (2d Cir. 2015) ...........................................................................22

*Carrillo v. National Council of Churches of Christ in U.S.A.*,
    976 F.Supp. 254 (S.D.N.Y.1997)..........................................................................22

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...............................................................................................17

*DiCola v. Swiss Re Holding*,
    996 F.2d 30 (2d Cir. 1993).....................................................................................24

*Elliot-Leach v. New York City Dep't of Educ.*,
    201 F.Supp.3d 238 (E.D.N.Y. 2016) (Glasser, J.) ..........................................19, 20

*Ferguson v. Lander Co.*,
    2008 WL 921032 (N.D.N.Y Apr. 2, 2008).............................................................23

*Garrett v. Garden City Hotel, Inc.*,
    2007 WL 1174891 (E.D.N.Y. Apr. 19, 2007) .......................................................22

*Hardy v. Pepsi Bottling Co. of New York, Inc.*,
    2016 WL 1301181 (S.D.N.Y. Mar. 31, 2016) ......................................................26

*Jackson v. Nor Loch Manor HCF*,
    134 Fed. App'x 477 (2d Cir. 2005)........................................................................26

*Kennebrew v. New York City Hous. Auth.*,
  2002 WL 265120 (S.D.N.Y. Feb. 26, 2002)..........................................21

*Lama v. Consolidated Edison Co.*,
  1999 WL 997279 (E.D.N.Y. Oct. 18, 1999)..........................................25

*Mascola v. City Univ. of N.Y.*,
  14 A.D.3d 409 (1st Dep't 2005) ..........................................................26

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)..............................................................................17

*O'Reilly v Consol. Edison Co. of N.Y., Inc.*,
  173 F. App'x 20 (2d Cir. 2006) ...........................................................23

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*,
  633 F.3d 81 (2d Cir. 2011).....................................................................20

*Ramirez v. New York City Bd. of Educ.*,
  481 F.Supp.2d 209 (E.D.N.Y. 2007) (Glasser, J.) ................................25

*Reyes v. Krasdale Foods, Inc.*,
  945 F. Supp. 2d 486 (S.D.N.Y. 2013)....................................................17

*Serby v. N.Y. City Dep't of Educ.*,
  526 Fed. Appx. 132 (2d Cir. 2013) ..................................................20, 23

*Singh v. New York State Dept. of Taxation and Finance*,
  911 F.Supp.2d 223 (W.D.N.Y. 2012) ...............................................19, 20

*Smith v. Westchester County*,
  769 F.Supp.2d 448 (S.D.N.Y.2011).......................................................19

*Song v. Ives Lab., Inc.*,
  957 F.2d 1041 (2d Cir.1992)..................................................................24

*Vinokur v. Sovereign Bank*,
  701 F.Supp.2d 276 (E.D.N.Y. 2010) ................................................25, 26

*Weinstock v. Columbia Univ.*,
  224 F.3d 33 (2d Cir.2000)......................................................................23

**STATUTES**

Administrative Code of the City of New York,

  § 8-107 ...........................................................................1, 26, 27, 28

  29 U.S.C. § 2601..................................................................................1

29 U.S.C. § 2615..................................................................................................................18

Defendants Rainbow USA, Inc. ("Rainbow"), Rainbow Apparel Distribution Center Corp., Jacques Salama ("Mr. Salama"), Adin Goldberg ("Mr. Goldberg") and Hazem Yousef ("Mr. Yousef") submit this memorandum of law in support of their motion for summary judgment dismissing Plaintiff Hatem Abd El Nabi Abd Rabo's ("Plaintiff") claims.   The undisputed material facts demonstrate that Plaintiff cannot present any evidence that establishes FMLA interference, FMLA retaliation or disability discrimination.   As a result, Defendants are entitled to summary judgment on all of Plaintiff's claims.

## PRELIMINARY STATEMENT

Plaintiff brought this action under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA") and New York City Human Rights Law, Administrative Code of the City of New York, § 8-107 ("NYCHRL") alleging Rainbow interfered with his FMLA rights, retaliated against him because he took FMLA leave and terminated his employment because he is allegedly disabled.  Plaintiff also alleges aiding and abetting under the NYCHRL.  All of Plaintiff's claims fail.

As shown below, Rainbow made the lawful employment decision to terminate Plaintiff. Plaintiff's FMLA interference claim fails because Rainbow granted Plaintiff the FMLA leave he requested.   Plaintiff's FMLA retaliation claim fails because Rainbow decided to terminate Plaintiff before he requested FMLA leave.   Finally, Plaintiff's own testimony dooms his disability discrimination claim because he unequivocally testified "I don't have any disabilities" and vehemently denied that an alleged disability caused his termination.  For all of these reasons, summary judgment should be granted and Plaintiff's Complaint should be dismissed in its entirety with prejudice.

<u>**STATEMENT OF FACTS**</u>

**A.     Rainbow**

Rainbow is an international fashion retailer with over 1,000 locations in the United States, Puerto Rico and the United States Virgin Islands.  (*See* Defendant's Local 56.1 Statement of Material Undisputed Facts ("SMF") ¶ 1).  Rainbow employs an extremely diverse workforce and is committed to providing all of its employees with a workplace free of unlawful discrimination, harassment, and retaliation.  (*Id.* ¶ 2).

During Plaintiff's employment with the Company, Rainbow's Handbook contained a policy prohibiting discrimination, harassment, and retaliation.  (*Id.* ¶ 3).  Rainbow also maintained a Company policy providing eligible employees with FMLA leave.  (*Id.* ¶ 5).  Rainbow's FMLA policy prohibits any interference with an employee's rights under the FMLA and prohibits any retaliation against an employee that seeks FMLA leave.  (*Id.*).

**B.     Mr. Salama, Mr. Yousef and Mr. Goldberg**

Rainbow hired Mr. Salama in 1982 and promoted Mr. Salama to Regional Manager in 1999.  (*Id.* ¶ 16).  As Regional Manager, Mr. Salama's responsibilities include supervising District Managers and all of the roughly 70 stores in Region Six.  (*Id.* ¶ 17).   These stores are located in Brooklyn, Queens, Manhattan, Long Island, Suffolk, Nassau, and northern New Jersey. (*Id.*).  Mr. Salama has never personally handled a Rainbow employee's request for FMLA leave.  (*Id.* ¶ 19).

Rainbow hired Mr. Yousef in 1990 and promoted Mr. Yousef to Vice President of Operations and Director of Stores in the early 2000s.  (*Id.* ¶ 12).  As Vice President of Operations and Director of Stores, Mr. Yousef's responsibilities include directly supervising eight regional managers and all of the roughly 700 stores underneath them.  (*Id.* ¶ 13).   These stores are located in 20 states, Puerto Rico and the U.S. Virgin Islands.  (*Id.*).   Mr. Salama

reports directly to Mr. Yousef.  (*Id.* ¶ 18).  Mr. Yousef has never personally handled a Rainbow employee's request for FMLA leave.  (*Id.* ¶ 15).

Rainbow hired Mr. Goldberg as Senior Vice President and Chief Human Resources Officer in March 2011.  (*Id.* ¶ 9).  As Senior Vice President and Chief Human Resources Officer, Mr. Goldberg's responsibilities include overseeing the human resources department, doing legal work for Rainbow in the labor and employment area and generally handling legal matters that are assigned to Mr. Goldberg.  (*Id.* ¶ 10).  Mr. Goldberg has never personally handled a Rainbow employee's request for FMLA leave.  (*Id.* ¶ 11).

Other than Plaintiff's instant lawsuit, no one has ever lodged a complaint of FMLA interference, FMLA retaliation or disability discrimination against Mr. Yousef, Mr. Salama or Mr. Goldberg.  (*Id.* ¶ 116).

### C.   Plaintiff's Employment At Rainbow

Rainbow hired Plaintiff near the end of 2005 as a Store Manager in the Bronx.  (*Id.* ¶ 20). Mr. Yousef and Mr. Salama interviewed Plaintiff in 2005 and Mr. Yousef made the decision to hire Plaintiff as a store manager.  (*Id.*).  Mr. Goldberg, Mr. Yousef and Mr. Salama refer to Plaintiff as "Tom," "Hatem" and/or "Rabo."  (*Id.* ¶ 20).  Plaintiff is known by all of these names or nicknames.  (*Id.* ¶ 21).  Plaintiff voluntarily left Rainbow near the end of 2006.  (*Id.* ¶ 22). Rainbow rehired Plaintiff in February 2008 as an Area Manager.  (*Id.* ¶ 23).[1]  Rainbow promoted Plaintiff to the District Manager position at the end of 2008.  (*Id.* ¶ 24).  Mr. Yousef made the decisions to rehire Plaintiff and to promote Plaintiff to District Manager.  (*Id.*).

As a District Manager, Plaintiff reported directly to Mr. Salama.  (*Id.* ¶ 27).  Plaintiff thinks Mr. Salama is a "nice guy" and was an honest and trustworthy boss.  (*Id.*).  Both Plaintiff

---

[1] Rainbow utilizes an Area Manager in some of its Districts.  (SMF ¶ 23).  In those Districts the Area Manager is a supervisory employee between the Store Manager and the District Manager.  (*Id.*).

and Mr. Yousef are from Egypt.  (*Id.* ¶ 28).  Plaintiff was "friends" with Mr. Yousef and they "hung out together" and "used to have drinks and dinner together." (*Id.*).  Mr. Yousef had a "friendship" with Plaintiff and use to go to the "best restaurants" with Plaintiff outside of work. (*Id.*).

As a District Manager, Plaintiff's duties and responsibilities included:

- Maintain profitable store sales by fostering a retail selling culture, including effective retail sales skills.

- Ensure each store is effectively merchandised and presented according to standards.

- Recruitment/retention/motivation of high-quality employees and management teams.

- Ensure compliance with company security and shrink policies and programs and maintain an acceptable District shrink.

- Control payroll expenses at a store level through regular monitoring of matrix and hours used per store, approving all new hire salaries and pay increases, organizing personnel moves to maximize payroll percent of sales and profitability, and reviewing payroll exceptions on a weekly basis.

- Recruit, train, develop, motivate and retain high quality store teams.

- Ensure all corporate policies and procedures are followed.

- Review markdowns and promotions with Regional Manager and Buying department to drive sales and react to district trends.

- Manage a team of five to fifteen Store Managers who oversee approximately five to fifteen stores, visiting every store on a bi-weekly basis.

- Facilitate, educate, coach and develop excellent, results-oriented, customer-oriented, retail/sales-oriented associates/teams.

- Recruit and select associates and managers.

- Present and implement decisive and creative solutions to issues/opportunities to grow the business.

- Manage priorities through adaptability, willingness to take calculated risks, and follow-up.

- Be able to deal with the stresses and deadlines associated with running a multi-unit district.

- Conduct yourself with outstanding interpersonal skills with an emphasis on building partnership, managing conflict and negotiating.

- Lead, coach and develop staff to improve performance and achieve professional goals.

(*Id.* at ¶ 25).  As a District Manager, Plaintiff was an at will employee – Plaintiff could leave Rainbow any time he wanted and Rainbow could terminate Plaintiff for any lawful reason as well.  (*Id.* at ¶ 26).

Plaintiff initially performed well in the District Manager position.  (*Id.* at ¶ 29).  Mr. Yousef testified that when Plaintiff started as a District Manager, "Hatem aggressive.  His people skills are rough.  Good operational, fair merchant.  Fair merchant.  At that time I thought I had plans for him to be a regional manager." (*Id.*).  However, Plaintiff began performing poorly and acting inappropriately and insubordinately during roughly the last two years of his employment with Rainbow.  (*Id.* at ¶ 30).

### 1.     Rainbow Repeatedly Loans Money to Plaintiff

Plaintiff began divorce proceedings with his ex-wife in or about September 2009.  (*Id.* at ¶ 31).  Plaintiff testified that since his divorce proceedings began, Plaintiff's ex-wife "did whatever she did to don't let me see my kid.  So since September 2009 I don't see my kid.  I don't see him at all." (*Id.*).  Mr. Yousef witnessed Plaintiff cry every time he spoke about his son he had not seen since September 2009.  (*Id.* at ¶ 32).

Plaintiff's divorce proceedings with his ex-wife were finalized in July or August 2015.  (*Id.* at ¶ 33).  During the course of the divorce proceedings, Plaintiff borrowed money from Rainbow "at least three, four times" to pay for lawyers and child support.  (*Id.*).  Rainbow loaned Plaintiff money every time Plaintiff asked for a loan.  (*Id.*).

Roughly two years before Plaintiff's employment with Rainbow ended on August 31, 2015, Plaintiff called Mr. Yousef and reported that he had been arrested because Plaintiff's ex-wife accused Plaintiff of "beating his own kid." (*Id.* at ¶ 34). Plaintiff did not have enough money for a lawyer or to pay bail. (*Id.*). Therefore, Mr. Yousef sent some of his friends to give Plaintiff the money he needed to pay bail and a lawyer. (*Id.*). After Mr. Yousef arranged to give money to Plaintiff for bail and a lawyer, Mr. Yousef began receiving reports that Plaintiff was acting inappropriately and insubordinately. (*Id.* at ¶ 35).

### 2.   Union Members Repeatedly Complain About Plaintiff

Pedro Galarza ("Mr. Galarza") is the business representative for Local 300A of Workers United, which is the union that represents bargaining unit employees at Rainbow stores in the New York City metropolitan area. (*Id.* at ¶ 36). Mr. Goldberg received numerous complaints from Mr. Galarza regarding Plaintiff's inappropriate treatment of Union members at Rainbow stores. (*Id.* at ¶ 37). Mr. Galarza repeatedly told Mr. Goldberg that Plaintiff yelled and screamed at Union employees in Rainbow stores. (*Id.* at ¶ 37).

Mr. Goldberg repeatedly contacted Plaintiff to discuss the complaints about Plaintiff's inappropriate behavior towards Union members and Plaintiff's "response was combative or aggressive in his tone" and Plaintiff "would be defensive, his voice would go up, and he would be assertive in his speech." (*Id.* at ¶ 38). Plaintiff's inappropriate behavior was "a pattern of behavior by Hatem of not dealing well with people and yelling and screaming at people and just not behaving the way that [Mr. Yousef] would expect a manager to behave." (*Id.* at ¶ 39).

### 3.   Rainbow Store Managers Repeatedly Complain About Plaintiff

Plaintiff treated numerous Store Managers working underneath Plaintiff in a disrespectful manner. (*Id.* at ¶ 40). In particular, Plaintiff was "rude, screaming at them this is the way it is." (*Id.* at ¶ 40). Numerous Store Managers working under Plaintiff notified Mr. Salama that they

were on the verge of quitting due to Plaintiff's inappropriate behavior.  (*Id.* at ¶ 41).  Mr. Salama "calmed" these Store Manager down by telling them "take it easy, work with him.  He means well."  (*Id.* at ¶ 41).

The Store Manager for Store Number 106 told Mr. Salama that Plaintiff was "very rude and he started yelling for no reason."  (*Id.* at ¶ 42).  The Store Manager for Store Number 106 also told Mr. Salama "I cannot take this anymore.  And you know I'm ready to walk out.  I don't need to work for a company if I'm going to be under Hatem."  (*Id.* at ¶ 42).  The Store Manager for Store Number 106 lodged this complaint in 2015.  (*Id.* at ¶ 43).

The Store Manager for Store Number 838 told Mr. Salama that Plaintiff acted rudely and yelled.  (*Id.* at ¶ 44).  The Store Manager for Store Number 838 also told Mr. Salama "I don't think I can work with this guy. . . . The way he comes to me it's like he's ready to fight me.  He's ready to make arguments with me."  (*Id.*).  In order to address this issue, Mr. Salama reassigned Store Number 838 to a District Manager other than Plaintiff.  (*Id.* at ¶ 45).

The Store Manager for Store Number 12 told Mr. Salama that Plaintiff acted rudely and yelled.  (*Id.* at ¶ 46).  The Store Manager for Store Number 12 also told Mr. Salama that "it's very, very difficult to work with a DM like that.  I never – I had several DMs but I never worked with a DM like Hatem."  (*Id.*).  The Store Manager for Store Number 202 told Salama that Plaintiff acted rudely and yelled.  (*Id.* at ¶ 47).

Mr. Salama repeatedly contacted Plaintiff to discuss Store Manager complaints about Plaintiff's inappropriate behavior, explaining to Plaintiff that he should "be more calmer and relaxed.  The way to talk to them if you want respect you have to earn it."  (*Id.* at ¶ 48).  In response, Plaintiff told Mr. Salama "[t]his is the way I am."  (*Id.* at ¶ 48).  Mr. Salama also told Plaintiff "[t]hat's not right what you're doing 'cause people are going to leave you and then

you're not going to have anybody." (*Id.* at ¶ 49). The Store Managers that complained to Mr. Salama did not want Plaintiff to know their identities because "they were scared" of Plaintiff. (*Id.* at ¶ 50). Mr. Salama also emphasized to Plaintiff that "[n]ot only management complaining the way you speak to them, it's also employees. We're having numerous complaints from the union[.]" (*Id.* at ¶ 51).

### 4.    Plaintiff Acts Insubordinately Towards Mr. Salama

Eventually, Plaintiff also began acting inappropriately and insubordinately towards Mr. Salama. (*Id.* at ¶ 52). Plaintiff began "disrespecting" Mr. Salama and disobeying Mr. Salama's direct instructions. (*Id.*).

### a.    Plaintiff Fails to Staff His Store

In January 2014, Plaintiff called Mr. Salama and told him that he did not have a Store Manager or an Assistant Store Manager to cover a specific store. (*Id.* at ¶ 53). Mr. Salama asked Plaintiff "what would you like me to do?" (*Id.*). In response, Plaintiff told Mr. Salama "I want you to get me somebody." (*Id.*). Plaintiff's tone with Mr. Salama during this conversation was "shrewd and loud" and got Mr. Salama very upset because Mr. Salama had a heart problem that year and could not take Plaintiff's insubordination anymore. (*Id.* at ¶ 54).

Mr. Salama patiently explained to Plaintiff that if Mr. Salama could get someone to help he would; however, Mr. Salama did not have anyone to cover the store at that time and it was Plaintiff's responsibility to shuffle his employees around to cover the store. (*Id.* at ¶ 55). Mr. Salama also told Plaintiff "this is your job to train and to recruit management just in case something like this happens." (*Id.*). In response, Plaintiff told Mr. Salama that he was not going to have anyone cover the store, "[s]o you can do whatever you like to do." (*Id.* at ¶ 56). Mr. Salama could not believe Plaintiff's blatant insubordination, telling him "what do you mean what I would like to do? This is your job to make it happen." (*Id.*).

On January 30, 2014, Plaintiff emailed Mr. Yousef and Mr. Salama regarding the staffing issue at his store, noting that "I tried to call [Mr. Yousef] to explain to you the situation in my district, because my regional mgr doesn't explain anything to you, he just repeats what your saying because he doesn't want the headache from you."  (*Id.* at ¶ 57).

Mr. Yousef reviewed Plaintiff's January 30, 2014 email and determined that it shows Plaintiff giving Mr. Salama a hard time.  (*Id.* at ¶ 58).  Mr. Yousef also testified that Plaintiff's January 30, 2014 email "show[s] insubordination from Tom.  He knows his responsibility for the store.  That's his job." (*Id.*).  In sum, Mr. Yousef explained that Plaintiff was "trying to cover up that he's not doing his job in staffing people and blaming people that are higher up than him." (*Id.*).

Later that same day, Mr. Yousef emailed Mr. Salama and Plaintiff as follows:  "Dm and rm demote ur self to run the store.  If u can not cover the store.  Thankx.  No replay.  Act on it." (*Id.* at ¶ 59).  Mr. Yousef explained his email as follows:  "I'm saying to both of them work like team, demote yourself where [Mr. Salama] becomes the district manager and Hatem becomes the store manager and work together as a team." (*Id.*).

### b.      Plaintiff Shows Up At Headquarters Without Permission

Mr. Salama usually attends a meeting with his supervisors at Rainbow's headquarters on Mondays.  (*Id.* at ¶ 60).  Mr. Salama's supervisors do not like to see the District Managers at headquarters on Mondays because it is distracting for the Rainbow employees at headquarters. (*Id.*).  Therefore, Mr. Salama's supervisors told Mr. Salama that they did not want to see any of the District Managers under Mr. Salama at headquarters on Mondays without prior approval. (*Id.*).

On Monday, February 24, 2014, Mr. Salama called Plaintiff and told him not to come to Rainbow's headquarters on February 24, 2014.  (*Id.* at ¶ 61).  Despite Mr. Salama's direct

instruction, Plaintiff came to Rainbow's headquarters on February 24, 2014. (*Id.*). Therefore, Mr. Salama issued Plaintiff a Disciplinary Action Form dated February 24, 2014 regarding Plaintiff's insubordination. (*Id.* at ¶ 62). The form indicates that it is a "Final Warning" and Mr. Salama wrote at the bottom as follows: "On 2.24.2014 I called you not to come to the office. You disrespected me and you came. This is not the first time that it happened." (*Id.*).

Plaintiff signed the Disciplinary Action Form. (*Id.* at ¶ 63). Above Plaintiff's signature the form states as follows: "I understand that a continuation of the above behavior may result in further disciplinary action, up to and including immediate termination." (*Id.*). Mr. Salama told all of the District Managers under him not come to Rainbow's headquarters on February 24, 2014. (*Id.* at ¶ 64). Plaintiff was the only District Manager under Mr. Salama that came to Rainbow's headquarters on February 24, 2014. (*Id.*).

### c.     Mr. Salama Can No Longer Work With Plaintiff

Mr. Yousef repeatedly coached Plaintiff about his inappropriate behavior and insubordination. (*Id.* at ¶ 65). Mr. Yousef told Plaintiff that he had a "great future" with Rainbow, but he had to "[w]atch how you talk to the people. Watch how you talk to your superiors because this is a team work. Retail is a team sport. It's not an individual sport. You can be your best, but without your team you're nothing." (*Id.*). Despite Mr. Yousef's verbal coaching, Plaintiff continued to act inappropriately and insubordinately towards Mr. Salama throughout the last year of Plaintiff's employment with Rainbow. (*Id.* at ¶ 66).

In May 2015, Mr. Salama dictated a letter to Rainbow Human Resources employee Edgar Rawas ("Mr. Rawas") regarding Plaintiff's continued inappropriate behavior and insubordination. (*Id.* at ¶ 67). Mr. Salama dictated the letter to Mr. Rawas because Mr. Salama is not a great writer and he wanted Mr. Rawas to draft a letter that Mr. Salama could send to Mr. Yousef. (*Id.*).

Mr. Rawas drafted the letter as follows:

May 4, 2015

Hazem,

As you know I have been experiencing issues with Hatem for quite some time. His attitude towards me is very rude, offensive and insubordinate and violates the company standards of conduct.  I have also gotten numerous complaints from his managers about the way he speaks and yells at them on the selling floor in front of other employees and customers.  I do not need to tell you how unprofessional this type of behavior is and how it may expose us to employee relations issues.

Last Monday, you told me that you would take care of it, but that apparently never happened.   Since then, I tried to overlook his actions but he had not contacted or replied to me once since the latest argument we had.   This is destructive to business and we cannot operate like this.  In all of my 30+ years with this company, I have never been treated so disrespectfully.  I have been tolerant of this behavior for far too long.  I suffer from a heart condition and will not jeopardize my health for him.  Since he was counseled on this subject in the past, I do not see any potential for change.  I propose that you either transfer his district to another region or have him report to you directly.
Thank you.

Jack Salama

(*Id.* at ¶ 67).

Mr. Salama sent Mr. Yousef this letter because he wanted Plaintiff out of Mr. Salama's region and he wanted to let Mr. Yousef know that he "will not work with Tom in this condition no matter what it is.  Sorry, I cannot do it."  (*Id.* at ¶ 69).  Mr. Salama never spoke to Plaintiff again after he sent Mr. Yousef the letter dated May 4, 2015.  (*Id.* at ¶ 70).

**5.   Plaintiff Acts Insubordinately Towards Mr. Yousef**

In or about May 2015, Mr. Yousef instructed Plaintiff to report directly to Mr. Yousef. (*Id.* at ¶ 71).   Mr. Yousef made this decision in an effort to "save" Plaintiff's career with Rainbow.  (*Id.*).

In June 2015, Mr. Yousef was visiting one of the stores in Plaintiff's District and noticed a minor issue that needed to be addressed.  (*Id.* at ¶ 72).  Mr. Yousef called Plaintiff to discuss

the issue and Plaintiff blew up and threw a temper tantrum at Mr. Yousef and then hung up the phone. (*Id.*).  Mr. Yousef was stunned by Plaintiff yelling, screaming and cursing on the phone. (*Id.*).

Mr. Yousef tried to call Plaintiff back, but Plaintiff never answered his phone. (*Id.* at ¶ 73).  Mr. Yousef called Mr. Goldberg right away and told him about Plaintiff blowing up on the phone and hanging up. (*Id.* at ¶ 74).  Mr. Yousef and Mr. Goldberg agreed to meet and discuss the situation at Rainbow's headquarters the following Monday, June 15, 2015. (*Id.*).

### 6.   Rainbow Decides to Terminate Plaintiff on June 22, 2015

On Wednesday, June 10, 2015, Mr. Goldberg spoke with Mr. Salama on the phone regarding Plaintiff's inappropriate behavior and insubordination. (*Id.* at ¶ 75).  During this phone call, Mr. Salama told Mr. Goldberg that he was "very frustrated" in the way Plaintiff was acting and Mr. Salama could no longer tolerate Plaintiff's behavior. (*Id.*).  At the conclusion of the phone call, Mr. Salama and Mr. Goldberg agreed to meet and discuss the situation with Mr. Yousef at Rainbow headquarters the following Monday, June 15, 2015. (*Id.* at ¶ 76).

Mr. Goldberg took contemporaneous notes of his June 10, 2015 phone call with Mr. Salama. (*Id.* at ¶ 77).  Mr. Goldberg's notes from June 10, 2015 memorialize that Plaintiff was continuing to have problems with Mr. Salama and had "yelled" at Mr. Yousef. (*Id.*).

On Monday, June 15, 2015, Mr. Goldberg, Mr. Yousef and Mr. Salama met at Rainbow's headquarters. (*Id.* at ¶ 78).  During that meeting, Mr. Goldberg recommended that Rainbow terminate Plaintiff because of his inappropriate behavior and insubordination. (*Id.*).  In response, Mr. Yousef said he wanted a week to think it over. (*Id.*).  At the conclusion of the meeting, Mr. Goldberg, Mr. Yousef and Mr. Salama agreed to meet and discuss the situation the following Monday, June 22, 2015. (*Id.* at ¶ 79).

Mr. Goldberg took contemporaneous notes of his June 15, 2015 meeting with Mr. Yousef

and Mr. Salama.  (*Id.* at ¶ 80).  Mr. Goldberg's notes from June 15, 2015 memorialize the

following:

> 6-15:   Mtg w/Hazem & Jacques –
>
> Hazem: first Jacques got to point of not being able to deal w/Hatem – now its gotten out of hand and Hatem yelled at him – Insubordinate, can't be managed.
>
> Discussed options.   I reminded Hazem that Hatem always has been a problem – subject of complaints from Union & Union members.
>
> Decision to terminate – will discuss further next Monday

(*Id.*).

On Monday, June 22, 2015, Mr. Goldberg, Mr. Yousef and Mr. Salama met at Rainbow's

headquarters.  (*Id.* at ¶ 81).  During that meeting, Mr. Yousef agreed with Mr. Goldberg's

recommendation to terminate Plaintiff.  (*Id.*).  Rainbow finalized the decision to terminate

Plaintiff on June 22, 2015.  (*Id.* at ¶ 82).

Mr. Goldberg took contemporaneous notes of his June 22, 2015 meeting with Mr. Yousef

and Mr. Salama.  (*Id.* at ¶ 83).  Mr. Goldberg's notes from June 22, 2015 memorialize the

following:

> Follow up on 6/22 – finalized decision to terminate for insubordination to Hazem & Jacques.  Plan is to have Jacques meet him at store or outside of store and advise him of decision.  At this point, no severance but will consider after he is termed.  Likely day to tell him is later this week or at the latest on Monday 6/29.

(*Id.*).

Mr. Salama planned to meet with Plaintiff on June 29, 2015 to notify him of his

termination; however, Plaintiff called in sick on June 29, 2015 and Mr. Salama was unable to

meet with Plaintiff.  (*Id.* at ¶ 85).

### 7.    Rainbow Grants Plaintiff's FMLA Leave Request

Plaintiff visited Dr. Hossam Amin ("Dr. Amin") on April 4, 2015 and April 11, 2015. (*Id.* at ¶ 86).  Plaintiff was in good health and had no medical issues at the time of these visits to Dr. Amin.  (*Id.*).  Plaintiff slipped and fell getting out of his car on June 24 or 25, 2015.  (*Id.* at ¶ 87).  Plaintiff began experiencing pain in his back due to this slip and fall.  (*Id.*).  Plaintiff visited Dr. Amin on June 29, 2015.  (*Id.* at ¶ 88).  Dr. Amin told Plaintiff during this visit that he needed to relax and should remain bedridden for two weeks.  (*Id.*).

Plaintiff visited psychiatrist Dr. Asraf Elshafei ("Dr. Elshafei") on June 30, 2015 because he was experiencing anxiety associated with not seeing his son since his divorce proceedings began.  (*Id.* at ¶¶ 89, 90).    This was Plaintiff's first visit to Dr. Elshafei ever.  (*Id.* at ¶ 89).  Dr. Elshafei did not tell Plaintiff that he should not go work on June 30, 2015.  (*Id.* at ¶ 90).  Instead, Dr. Elshafei told Plaintiff to "relax" and prescribed him medication because he was having trouble sleeping.  (*Id.*).

On July 1, 2015, Plaintiff sent an email to Mr. Salama and Mr. Yousef that attached a doctor's note from Dr. Amin.  (*Id.* at ¶ 91).  The doctor's note from Dr. Amin is dated June 29, 2015 and indicates that Plaintiff "is clear to return to work on 7/13/15."  (*Id.*).  The doctor's note from Dr. Amin does not state why Plaintiff needed to be out of work until July 13, 2015.  (*Id.*).  Mr. Salama and Mr. Yousef did not respond to Plaintiff's July 1, 2015 email.  (*Id.* at ¶ 92).

On July 11, 2015, Plaintiff visited Dr. Elshafei for the second time.  (*Id.* at ¶ 93).  Dr. Elshafei's medical notes from July 11, 2015 indicate that Plaintiff "reported that he has a better handle on the stress in life" and was "feeling less anxious since his last visit."  (*Id.*).  Dr. Elshafei's notes from July 11, 2015 also indicate that Plaintiff "stated he is still unable to control his temper.  Reported some racing thoughts."  (*Id.*).

On July 11, 2015, Plaintiff visited Dr. Amin.  (*Id.* at ¶ 94).  On July 12, 2015, Plaintiff

sent an email to Mr. Salama and Mr. Yousef that attached a doctor's note from Dr. Amin.  (*Id.* at ¶ 95).  The doctor's note from Dr. Amin was dated July 11, 2015 and indicated that Plaintiff was suffering from low back pain and lumber radiculopathy.  (*Id.*).  The doctor's note from Dr. Amin also indicated that Plaintiff "is unable to work from 07/13/15 til 07/27/15."  (*Id.*).  Mr. Salama and Mr. Yousef did not respond to Plaintiff's July 12, 2015 email.  (*Id.* at ¶ 96).

Plaintiff did not officially request FMLA leave.  (*Id.* at ¶ 97).  Instead, Amy Pena ("Ms. Pena"), an employee in Rainbow's Human Resources department, sent Plaintiff a letter enclosing a FMLA Certification of Health Care Provider for Employee's Serious Health Condition form for Plaintiff to fill out and return.  (*Id.*).  Plaintiff received the letter from Ms. Pena and the FMLA paperwork before July 27, 2015.  (*Id.* at ¶ 98).  Plaintiff had a few questions regarding the FMLA paperwork that were promptly answered by Ms. Pena.  (*Id.*).

Plaintiff gave the FMLA paperwork to Dr. Elshafei.  (*Id.* at ¶ 99).  Plaintiff did not give the FMLA paperwork to Dr. Amin because his back was feeling better at that time.  (*Id.*).  Someone in Dr. Elshafei's office filled out the FMLA paperwork and Plaintiff went and picked it up.  (*Id.* at ¶ 100).  The FMLA paperwork filled out by Dr. Elshafei's office is dated July 20, 2015.  (*Id.*).  Plaintiff submitted the FMLA paperwork to Rainbow's Human Resources department after he picked it up.  (*Id.*).

The FMLA paperwork indicates his condition commenced on July 13, 2015 and the duration of Plaintiff's requested FMLA leave was "1 – 2 months."  (*Id.* at ¶ 101).  The FMLA paperwork also indicates that Plaintiff "is currently unable to tolerate work responsibilities, due to fluctuating mood, current stresses and inability to sleep and preoccupied thoughts."  (*Id.* at ¶ 102).  Plaintiff did not seek FMLA leave from Rainbow because of his back.  (*Id.*).

A couple of days or a week after Plaintiff submitted the completed FMLA paperwork,

Plaintiff received a letter from Ms. Pena dated July 28, 2015.  (*Id.* at ¶ 103).  Ms. Pena's letter indicates that Rainbow granted Plaintiff's request for FMLA leave from July 1, 2015 until September 22, 2015.  (*Id.*).

Rainbow fully granted Plaintiff's request for FMLA leave.  (*Id.* at ¶ 104).  Mr. Goldberg, Mr. Yousef and Mr. Salama were not involved in any way with Rainbow's decision to approve Plaintiff's request for FMLA leave.  (*Id.* at ¶ 105).  Mr. Goldberg, Mr. Yousef and Mr. Salama did not review the FMLA paperwork that Plaintiff submitted to Rainbow.  (*Id.* at ¶ 106).

On August 1, 2015, Plaintiff visited Dr. Elshafei.  (*Id.* at ¶ 107).    During the visit, Plaintiff told Dr. Elshafei that he was starting to feel better because he had been relaxing at home.  (*Id.*).  Dr. Elshafei prescribed Plaintiff medication during the visit and Plaintiff took the medication as prescribed.  (*Id.*).  On August 24, 2015, Plaintiff visited Dr. Elshafei.  (*Id.* at ¶ 108).  At that time, Plaintiff felt much better because he had gone on a week-long vacation to Long Beach Island, New Jersey.  (*Id.*).

On August 24, 2015, Dr. Elshafei's office completed a Medical Release to Return to Work form regarding Plaintiff.  (*Id.* at ¶ 109).  The Return to Work form indicates that Plaintiff could return to work on August 31, 2015 without restrictions.  (*Id.*).  Plaintiff was ready to return to work because he had started to feel "bored at home."  (*Id.*).  Plaintiff sent the completed Medical Release to Return to Work form to Rainbow.  (*Id.* at ¶ 110).

**8.    Rainbow Notifies Plaintiff of the June 22, 2015 Termination Decision**

On August 28, 2015, Mr. Salama sent an email to Plaintiff which stated as follows:  "Hi please report on Monday 8/31 at the HO at 4 pm."  (*Id.* at ¶ 111).  Plaintiff reported to Rainbow's headquarters at 4 p.m. on August 31, 2015.  (*Id.* at ¶ 112).    Plaintiff did not meet with Mr. Salama on August 31, 2015.  (*Id.*).  Plaintiff met with Mr. Goldberg and Mr. Yousef on August 31, 2015 in a conference room at Rainbow's headquarters.  (*Id.*).

During this meeting, Mr. Goldberg told Plaintiff that his employment with Rainbow was terminated.  (*Id.* at ¶ 113).  Mr. Goldberg also handed Plaintiff a letter that memorialized that Plaintiff's employment with Rainbow was terminated as of August 31, 2015.  (*Id.*).  Rainbow's decision to terminate Plaintiff was finalized on June 22, 2015, but the decision was not communicated to Plaintiff until August 31, 2015 because Plaintiff was out on leave from June 29, 2015 until August 30, 2015.  (*Id.* at ¶ 114).

After Plaintiff's termination, Rainbow promoted Amre Makhlouf ("Mr. Makhlouf") into the District Manager position previously held by Plaintiff.  (*Id.* at ¶ 125).  Prior to this promotion, Rainbow had granted Mr. Maklouf FMLA leave.  (*Id.*).

## ARGUMENT

### I.    LEGAL STANDARD

Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is appropriate "if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issues as to any material fact and it is clear the moving party is entitled to judgment as a matter of law." *Reyes v. Krasdale Foods, Inc.*, 945 F. Supp. 2d 486, 490 (S.D.N.Y. 2013) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  For Plaintiff to survive summary judgment, he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, he must produce sufficient admissible evidence from which a reasonable fact-finder could find in his favor.  *Id.*; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (holding that a plaintiff cannot escape summary judgment by presenting conclusory or speculative evidence; he must present "concrete evidence from which a reasonable juror could return a verdict in [his] favor").  The undisputed evidence here demonstrates that Plaintiff's

claims of FMLA interference, FMLA retaliation and disability discrimination cannot withstand summary judgment.

## II.      PLAINTIFF'S FMLA INTERFERENCE CLAIM FAILS

### A.      Legal Standard For FMLA Interference

"To make out a *prima facie* case on a claim for interference with FMLA rights under 29 U.S.C. § 2615(a)(1), a plaintiff must establish five elements: (1) that he is an eligible employee under the FMLA; (2) that defendant is an employer as defined in the FMLA; (3) that he was entitled to take leave under the FMLA; (4) that he gave notice to the defendant of his intention to take leave; and (5) that he was denied benefits to which he was entitled under the FMLA." *Achille v. Chestnut Ridge Transp., Inc.,* 584 Fed. Appx. 20, 21 (2d Cir. 2014) (affirming summary judgment and dismissing plaintiff's FMLA interference claim).   As demonstrated below, Plaintiff cannot meet the last element of his *prima facie* case – Rainbow never denied Plaintiff FMLA leave.

### B.      Plaintiff Admits That Rainbow Did Not Deny Him FMLA Leave

Plaintiff submitted FMLA leave request paperwork to Rainbow's Human Resources department that indicated his condition commenced on July 13, 2015 and would last "1 – 2 months."  (SMF at ¶¶ 100, 101).   In other words, Plaintiff's requested FMLA leave from July 13, 2015 until September 13, 2015.  (*Id.*).  In response, Rainbow granted Plaintiff FMLA leave from July 1, 2015 until September 22, 2015.  (*Id.* at ¶ 103).  Thus, Rainbow granted Plaintiff more FMLA leave than he requested.   During his deposition, Plaintiff acknowledged that Rainbow granted him a "two-and-a-half month" FMLA leave, and confirmed that Rainbow gave him the FMLA leave he requested.  (SMF at ¶¶ 103-104; Pl. Dep. 99, 120).[2]

---

[2]  Ultimately, Plaintiff did not utilized the entire FMLA leave Rainbow provided him; instead, he returned to work early on August 31, 2015 because he had started to feel "bored at home."  (SMF at ¶ 109).

Plaintiff's FMLA interference claim fails at the fifth step of the prima facie inquiry because the undisputed facts demonstrate that Rainbow approved Plaintiff's singular request for FMLA leave, providing him with all of the benefits to which he was entitled under the FMLA. *See Elliot-Leach v. New York City Dep't of Educ.,* 201 F.Supp.3d 238, 244 (E.D.N.Y. 2016) (Glasser, J.) (granting summary judgment and dismissing FMLA interference claim because "Plaintiff received all the benefits to which she was entitled, and her claim for FMLA interference must be dismissed"); *Singh v. New York State Dept. of Taxation and Finance,* 911 F.Supp.2d 223, 239 (W.D.N.Y. 2012) (granting summary judgment and dismissing FMLA interference claim because employer approved employee's request for FMLA leave).

In addition, Plaintiff did not officially request FMLA leave.  (SMF at ¶ 97).  Instead, Rainbow's Human Resources department sent Plaintiff a letter enclosing the FMLA Certification of Health Care Provider for Employee's Serious Health Condition form for Plaintiff to fill out and return, and promptly answered Plaintiff's questions regarding FMLA leave. (*Id.*).  Rainbow not only did not deny Plaintiff FMLA leave, the Company did the opposite – it encourged Plaintiff to apply for FMLA leave and patiently explained how to apply.  (*Id.*).

For all the above reasons, Rainbow did not deny Plaintiff FMLA benefits and the Court should therefore grant summary judgment on Plaintiff's FMLA interference claim.

**C.     Plaintiff's FMLA Interference Claim Against the Individual Defendants Fails Because The Individual Defendants Did Not Exercise Control Over Plaintiff's FMLA Rights**

To determine whether an individual qualifies as an employer so as to justify imposing individual liability under the FMLA, district courts within the Second Circuit "must determine whether the named individual defendant controlled in whole or in part plaintiff's rights under the FMLA."  *Singh,* 911 F.Supp.2d at 240 (quoting *Smith v. Westchester County,* 769 F.Supp.2d 448, 475 (S.D.N.Y.2011)).

Applying this test to the record on summary judgment reveals that Mr. Salama, Mr. Yousef and Mr. Goldberg are not involved in the day-to-day personnel decisions at Rainbow related to FMLA leave.  Mr. Salama, Mr. Yousef and Mr. Goldberg had no involvement with Plaintiff's request for FMLA leave. (SMF at ¶¶ 105-106).  In the absence of a contrary showing by Plaintiff, no rational juror could find that Mr. Salama, Mr. Yousef or Mr. Goldberg controlled in whole or in part Plaintiff's rights under the FMLA.  *Singh,* 911 F.Supp.2d at 240 (granting summary judgment and dismissing FMLA interference claim brought against an individual defendant because the individual defendant was not involved in Plaintiff's FMLA leave request). Accordingly, for this additional reason, the Court should grant summary judgment on Plaintiff's FMLA interference claim brought against the individual Defendants.

## III.   PLAINTIFF'S FMLA RETALIATION CLAIM FAILS

### A.   Legal Standard For FMLA Retaliation

"To establish a *prima facie* case of FMLA retaliation, Plaintiff must show that: 1) [he] exercised rights protected under the FMLA; 2) [he] was qualified for [his] position; 3) [he] suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Elliot-Leach,* 201 F.Supp.3d at 244.

After establishing a *prima facie* case, a FMLA retaliation claim is analyzed under the McDonnell Douglas framework. *Serby v. N.Y. City Dep't of Educ.,* 526 Fed. Appx. 132, 134 (2d Cir. 2013).  If Plaintiff establishes a *prima facie* case, then the burden shifts to Rainbow to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination.  *Id.*  If Rainbow carries its burden, Plaintiff must then demonstrate that Rainbow's articulated reason was pretextual.  *Id.* (citing *Papelino v. Albany Coll. of Pharmacy of Union Univ.,* 633 F.3d 81, 92 (2d Cir. 2011).

As set forth below, Plaintiff cannot establish a *prima facie* case of FMLA retaliation because Rainbow decided to terminate him <u>before</u> he requested FMLA leave.  Even if Plaintiff could establish a *prima facie* case, his FMLA retaliation claim still must be dismissed because Rainbow has set forth a legitimate, nondiscriminatory reason for Plaintiff's termination (insubordination) and Plaintiff has provided no evidence of pretext.

### B.    Rainbow Decided To Terminate Plaintiff Before Plaintiff Requested FMLA Leave

On Monday, June 22, 2015, Mr. Goldberg, Mr. Yousef and Mr. Salama met at Rainbow's headquarters and finalized the decision to terminate Plaintiff.  (SMF at ¶¶ 81, 82).   Mr. Goldberg's contemporaneous notes of the June 22, 2015 meeting memorialize the following:

> **Follow up on 6/22 – finalized decision to terminate for insubordination to Hazem & Jacques.**  Plan is to have Jacques meet him at store or outside of store and advise him of decision.  At this point, no severance but will consider after he is termed.  Likely day to tell him is later this week or at the latest on Monday 6/29.

(*Id.* at ¶ 83) (emphasis added).  Mr. Salama planned to meet with Plaintiff on June 29, 2015 to notify him of his termination; however, Plaintiff called in sick on June 29, 2015.  (*Id.* at ¶ 85).

On July 1, 2015, Plaintiff sent an email to Mr. Salama and Mr. Yousef that attached a doctor's note which indicated Plaintiff needed to be out of work until July 13, 2015.  (*Id.* at ¶¶ 91, 92).  A few weeks later, Plaintiff submitted FMLA paperwork dated July 20, 2015 to Rainbow's Human Resources department requesting FMLA leave.  (*Id.* at ¶¶ 100, 101).  Plaintiff had never previously requested FMLA leave from Rainbow.  (*Id.* at ¶ 101).

As the undisputed evidence makes clear, Rainbow sought to terminate Plaintiff's employment before Plaintiff requested and obtained FMLA leave.  No FMLA violation occurs where an employer has already decided to terminate the employee before FMLA leave is requested.  *See Kennebrew v. New York City Hous. Auth.,* 2002 WL 265120, *19–20 (S.D.N.Y.

Feb. 26, 2002) (granting summary judgment and dismissing FMLA retaliation claim because the decision to terminate plaintiff was made two days before plaintiff requested FMLA leave); *Carrillo v. National Council of Churches of Christ in U.S.A.*, 976 F.Supp. 254, 256 (S.D.N.Y.1997) (granting summary judgment and dismissing FMLA retaliation claim because the decision to terminate plaintiff was made before plaintiff went out on medical leave).

Therefore, this Court should grant summary judgment and dismiss Plaintiff's FMLA retaliation claim.

**C.    Plaintiff Cannot Establish a Causal Connection Between His Request For FMLA Leave and Rainbow's Decision To Terminate Him**

During his deposition, Plaintiff testified as follows:

Q:    So the basis of your claim is that you went on leave.

A:    Exactly.

Q:    You came back.

A:    (Witness nods.)

Q:    You were a good worker.  And you were terminated.

A:    Yes.

Q:    Any other facts that support your claim.

A:    No.  I don't think so.

(Pl. Dep. 119-120).  In other words, the only evidence Plaintiff offers in support of his FMLA retaliation claim is the timing of Rainbow's notification to him that he was terminated.

District Courts in this Circuit have consistently held that timing alone "does not allow for an inference of causation."  *Garrett v. Garden City Hotel, Inc.*, 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007) (dismissing retaliation claim because timing alone was not sufficient to withstand summary judgment); *Brown v. City of New York,* 622 F. App'x 19, 20 (2d Cir. 2015)

(affirming summary judgment and dismissal of FMLA retaliation claim that only relied on timing of protected activity and adverse action) O'*Reilly v Consol. Edison Co. of N.Y., Inc.,* 173 F. App'x 20, 22 (2d Cir. 2006) (same); *see also Ferguson v. Lander Co.*, 2008 WL 921032, at *20 (N.D.N.Y Apr. 2, 2008) (although plaintiff was terminated one day after his protected activity, "a decision was made much sooner . . . to target [plaintiff] for termination").

For this additional reason, the Court should grant summary judgment and dismiss Plaintiff's FMLA retaliation claim.

**D.    Rainbow Had a Legitimate Reason To Terminate Plaintiff and There Is No Evidence of Pretext**

The undisputed evidence in this case demonstrates that Rainbow terminated Plaintiff because of Plaintiff's inappropriate behavior and direct insubordination towards Mr. Salama and Mr. Yousef.  (SMF ¶¶ 75-84).  Plaintiff does not offer any evidence upon which this Court could find Rainbow's legitimate, nondiscriminatory reason for Plaintiff's termination was pretextual. To rebut Rainbow's explanation, Plaintiff "was obliged to produce 'not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by [Rainbow] were false, and that more likely than not discrimination was the real reason for the employment action."  *Serby,* 526 Fed. Appx. at 134 (quoting *Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir.2000)).  Plaintiff failed to do that.

After Plaintiff's termination, Rainbow promoted Mr. Makhlouf into the District Manager position previously held by Plaintiff.  (*Id.* at ¶ 125).  Prior to this promotion, Rainbow had granted Mr. Maklouf FMLA leave.  (*Id.*).  This subsequent employment decision demonstrates Rainbow has no animus towards employees that take medical leave.

Simply put, there is no evidence of pretext.  The Court should grant summary judgment on Plaintiff's FMLA retaliation claim.

## IV.    PLAINTIFF'S NYCHRL DISABILITY DISCRIMINATION CLAIM FAILS

### A.    Legal Standard for NYCHRL Disability Discrimination

"[D]iscrimination claims brought under the . . . NYCHRL are analogous to claims brought under the ADA, and the same elements and burdens of proof and production apply." *Brower v. Continental Airlines, Inc.*, 62 F.Supp.2d 896, 903 (E.D.N.Y. 1999) (citing *Song v. Ives Lab., Inc.*, 957 F.2d 1041, 1048 (2d Cir.1992)).  To establish a *prima facie* case of disability discrimination, Plaintiff must show that "(1) [Rainbow] is subject to the [NYCHRL]; (2) that [he] is disabled within the meaning of the [NYCHRL]; (3) that [he] is otherwise qualified to perform the essential functions of [his] job with or without reasonable accommodation; and (4) that [he] suffered an adverse employment action because of [his] disability."  *Id.*

If Plaintiff is able to do so, the burden of production shifts to Rainbow to provide a legitimate, nondiscriminatory reason for the adverse action.  Importantly, Rainbow's burden is simply one of articulation or production; it is not required to prove the absence of a discriminatory motive.  *See DiCola v. Swiss Re Holding*, 996 F.2d 30, 32 (2d Cir. 1993). Finally, if Rainbow meets its burden of production, then the burden shifts back to Plaintiff to establish that the company's proffered reason is a pretext for discrimination.  *Id.*

Given these requirements and the undisputed record evidence, Plaintiff's NYCHRL disability discrimination claim must be dismissed.

### B.    Plaintiff Admits That He Is Not Disabled and Rainbow Did Not Terminate Him Because of His Alleged Disability

During his deposition, Plaintiff testified as follows:

Q:    Do you have any disability?

A:    I don't have any disabilities.

* * *

Q:      So your disability had nothing to do with your termination, correct?

MS. MALDONADO:  Objection form.  You can go ahead and answer.

A:      I don't have a disability.

Q:      So that had nothing to do with it.

A:      I don't have a disability.

(Pl. Dep. 119-120).  In sum, Plaintiff unequivocally admits that he is not disabled and Rainbow did not terminate him because of his alleged disability.

Thus, Plaintiff's NYCHRL disability discrimination claim must be dismissed because Plaintiff cannot establish the second element of his *prima facie* case.  *Best v. Drugs,* 2017 WL 218251, at *4 (S.D.N.Y. Jan. 11, 2017) (granting summary judgment and dismissing disability discrimination claim because plaintiff did not establish that she is disabled); *Ramirez v. New York City Bd. of Educ.*, 481 F.Supp.2d 209, 220 (E.D.N.Y. 2007) (Glasser, J.) (granting summary judgment and dismissing disability discrimination claim because plaintiff failed to establish that he was disabled).

Plaintiff's NYCHRL disability discrimination claim also must be dismissed because Plaintiff cannot establish the fourth element of his *prima facie* case.  *See Vinokur v. Sovereign Bank,* 701 F.Supp.2d 276, 295 (E.D.N.Y. 2010) (granting summary judgment and dismissing NYCHRL disability discrimination claim because employee failed to establish employer terminated her due to her disability); *Lama v. Consolidated Edison Co.,* 1999 WL 997279, at *2, (E.D.N.Y. Oct. 18, 1999) (granting summary judgment and dismissing disability discrimination claim because "[p]laintiff cannot sustain an action based on [her] conclusory allegations of discrimination").

Accordingly, Plaintiff has not established his *prima facie* case and his NYCHRL

disability discrimination claim should be dismissed.

### C.   Rainbow Had a Legitimate Reason To Terminate Plaintiff and There Is No Evidence of Pretext

As set forth in Section III.D, *supra*, Rainbow had a legitimate, nondiscriminatory reason to terminate Plaintiff (insubordination) and Plaintiff has not advanced admissible evidence demonstrating pretext.  Accordingly, Plaintiff's NYCHRL disability discrimination claim must be dismissed on this basis as well.  *See Jackson v. Nor Loch Manor HCF*, 134 Fed. App'x 477, 478 (2d Cir. 2005) (summary judgment affirmed in a disability discrimination lawsuit where plaintiff was terminated for violating the company policy); *Hardy v. Pepsi Bottling Co. of New York, Inc.*, 2016 WL 1301181, at *7 (S.D.N.Y. Mar. 31, 2016) ("In light of Hardy's continual, documented absenteeism, for which he had been issued several warnings and given several opportunities to improve, no reasonable fact finder could conclude that Pepsi initiated termination procedures because of his alleged disability."); *Vinokur*, 701 F. Supp. 2d at 292 (summary judgment granted on plaintiff's disability discrimination claim because she was terminated for violating company policy, not because of her medical condition).

## V.   PLAINTIFF'S AIDING & ABETTING CLAIM FAILS

Pursuant to the NYCHRL, it is an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any acts forbidden" under the respective human rights laws.  *See* NYC Admin Code § 8-107[6].  As set forth above, this Court should grant summary judgment for Rainbow in regard to Plaintiff's NYCHRL disability discrimination claim.  *See* Sections IV, *supra*.  Accordingly, Mr. Salama, Mr. Yousef and Mr. Goldberg cannot be liable for aiding and abetting in the absence of a valid claim against Rainbow.  *See Mascola v. City Univ. of N.Y.*, 14 A.D.3d 409, 410 (1st Dep't 2005) (finding that because "the claims against the university were properly dismissed, the court also properly dismissed the claims against the

individual defendants for aiding and abetting").

This Court also should summarily dismiss Plaintiff's aiding and abetting claims against Mr. Salama, Mr. Yousef and Mr. Goldberg because Plaintiff has advanced no evidence showing that Mr. Salama, Mr. Yousef or Mr. Goldberg aided, abetted, incited, compelled or coerced the doing of any acts forbidden by the NYCHRL.  As set forth above, there is <u>no evidence</u> of Mr. Salama, Mr. Yousef or Mr. Goldberg personally violating the NYCHRL.  *See* Sections IV, *supra*.  For all of these reasons, Count III must be dismissed as to Mr. Salama, Mr. Yousef and Mr. Goldberg.

## VI.   PLAINTIFF'S EMPLOYER LIABILITY CLAIM FAILS

The NYCHRL provides that an employer is liable for the unlawful discriminatory conduct of its employees or agents where:

(1) the employee or agent exercised managerial or supervisory responsibility; or

(2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

(3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct

NYC Admin Code § 8-107(13).   In other words, the "unambiguous language of NYC Administrative Code § 8-107(13) indicates the existence of strict liability in the employment context for acts of managers and supervisors, and for acts of co-workers where the employer knew of the act and failed to take prompt and effective remedial action, or should have known and had not exercised reasonable diligence to prevent it." *Bailey v Brooklyn Hosp. Ctr.*, 2017 NY Slip Op 30013(U), 2017 N.Y. Misc. LEXIS 24, at *9-10 (N.Y. Sup. Ct., Jan. 4, 2017).

As set forth above, none of Rainbow's managerial or supervisory employees committed

an unlawful act under the NYCHRL.  *See* Sections IV & V, *supra*.  Accordingly, Rainbow is not liable under Section (1) of NYC Admin Code § 8-107(13).  *See Bailey*, 2017 N.Y. Misc. LEXIS at *10-11 (dismissing claim under Section (1) of NYC Admin Code § 8-107(13)).

In addition, Rainbow exercised reasonable diligence to prevent discriminatory conduct and Plaintiff never complained of disability discrimination during his employment with Rainbow.  Accordingly, Rainbow is not liable under Sections (2) and (3) of NYC Admin Code § 8-107(13).  *See Bailey*, 2017 N.Y. Misc. LEXIS at *10-12 (dismissing claim under Section (2) and (3) of NYC Admin Code § 8-107(13) because the defendant exercised reasonable diligence to prevent discriminatory conduct).  For all of these reasons, Count IV must be dismissed in its entirety.

<u>**CONCLUSION**</u>

For all the reasons stated herein, Defendants respectfully request that the Court grant Defendants' motion for summary judgment dismissing Plaintiff's claims against Defendants in their entirety and with prejudice, and grant Defendants such other and further relief as the Court deems just and proper.

Date:   April 23, 2018
New York, New York

*/s/ Houston A. Stokes*
A. Michael Weber
Houston A. Stokes
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022.3298
212.583.9600

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 23, 2018, I caused a copy of the foregoing Defendants'

Memorandum of Law In Support of Their Motion for Summary Judgment to be served via ECF

upon the following:

Jessenia Maldonado
Steven John Fingerhut
H. Joseph Cronen
Phillips & Associates PLLC
45 Broadway, Suite 620
New York, NY 10006
212-248-7431
Fax: 212-901-2107
jmaldonado@tpglaws.com
sfingerhut@tpglaws.com
jcronen@tpglaws.com

_/s/ Houston A. Stokes_
Houston A. Stokes