UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
HATEM ABD EL NABI ABD RABO,

                Plaintiff,

  -against-

RAINBOW USA INC., RAINBOW APPAREL
DISTRIBUTION CENTER CORP., JACQUES
SALAMA, *individually*, ADIN GOLDBERG,
*individually*, and HAZEM YOUSEF, *individually*,

                Defendants.
-----------------------------------------------------------------------x

<u>MEMORANDUM &
ORDER</u>
17-CV-2689(ILG)(RLM)

GLASSER, Senior United States District Judge:

Plaintiff Hatem Abd El Nabi Abd Rabo ("Rabo") brings this action pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et. seq.* and New York City Human Rights Law, Admin. Code § 8-107, *et. seq.*, against Defendants Rainbow USA, Inc., Rainbow Apparel Distribution Center Corp. (collectively, "Rainbow"), Adin Goldberg ("Goldberg"), Hazem Yousef ("Yousef"), and Jacques Salama ("Salama"). Compl. ¶ 1, Dkt. 1. Before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dkt. 23. For the reasons stated below, the motion is **GRANTED** in part and **DENIED** in part as moot.

## BACKGROUND

Rainbow operates more than 1,000 clothing stores within the United States, Puerto Rico, and the U.S. Virgin Islands. Compl. ¶13. Goldberg was hired by Rainbow in March 2011 as a Senior Vice President and Chief Human Resources Officer. Defs.' Local Rule 56.1 Statement of Undisputed Facts ("DSOF") ¶ 9, Dkt. 24; Pl.'s Opposition to DSOF and Pl.'s Counter 56.1 Statement ("PSOF") ¶ 9, Dkt. 32. Yousef was hired in 1990 and in the early 2000s was promoted

to Director of Stores and Vice President of Operations. DSOF ¶ 12; PSOF ¶ 12. Salama was hired around 1982-1983 and promoted in 1999 to Regional Manager. DSOF ¶ 16; PSOF ¶ 16.

Plaintiff was hired by Rainbow about the end of 2005 as a Store Manager. DSOF ¶ 20; PSOF ¶ 20. After voluntarily leaving Rainbow around the end of 2006, Plaintiff was rehired by Rainbow as an Area Manager in February 2008. DSOF ¶¶ 22-23; PSOF ¶¶ 22-23. He was promoted to the title of District Manager in late 2008. DSOF ¶ 24; PSOF ¶24. In that role, Plaintiff reported to Salama. DSOF ¶ 27; PSOF ¶ 27.

The parties offer dramatically different accounts of Plaintiff's employment at Rainbow and a labored recitation of each dispute is unnecessary for purposes of the Court's decision. It is enough to state that overall, Defendants maintain that while Plaintiff performed well initially in his role as District Manager, his performance deteriorated during roughly his final two years of employment at Rainbow. DSOF ¶¶ 29-30. Plaintiff, on the other hand, broadly denies any poor performance and states that he performed well consistently during his employment at Rainbow. *See, e.g.,* PSOF ¶¶ 29-30, 131-33, 137-38.

More relevant to the Court's opinion are certain other facts that are not—or cannot plausibly be—disputed. They are summarized below.

On June 24 or 25, 2015, Plaintiff began experiencing back pain following a slip and fall accident while exiting his car. DSOF ¶ 87; PSOF ¶ 87. He saw a doctor on June 29, 2015 and visited a psychiatrist on June 30, 2015 relating to marital and family issues. DSOF ¶¶ 88-90; PSOF ¶¶ 88-90; Pl. Dep. Tr. 62-63, 68-72, Dkt. 34-14.

On July 1, 2015, Plaintiff emailed Salama and Yousef attaching a doctor's note dated June 29, 2015, which stated that Plaintiff had seen the doctor on that day who excused him from work until July 13, 2015. DSOF ¶ 91; PSOF ¶ 91; Opp. Mem. Ex. 8, Dkt. 34-8. On July 12, 2015,

Plaintiff emailed Salama and Yousef attaching another doctor's note dated July 11, 2015, indicating that Plaintiff was unable to work until July 27, 2015. DSOF ¶ 95; PSOF ¶ 95; Defs.' Mem. Ex. 7 at 60-61, Dkt. 26-7.

The parties do not dispute that "Plaintiff did not officially request FMLA leave." DSOF ¶ 97; PSOF ¶ 97. Rainbow, unsolicited, sent Plaintiff a letter containing FMLA paperwork for him to complete and return. DSOF ¶¶ 97-98; PSOF ¶¶ 97-98. Plaintiff's psychiatrist's office completed the FMLA paperwork for him and it is dated July 20, 2015, awaiting or expecting him to call for it. DSOF ¶ 100; PSOF ¶ 100.

Sometime between July 20, 2015 and July 28, 2015, Plaintiff retrieved the FMLA paperwork and submitted it to Rainbow's Human Resources department. *See* DSOF ¶¶ 100, 103; PSOF ¶¶ 100, 103. Plaintiff's leave was subsequently granted via a letter from Rainbow dated July 28, 2015. DSOF ¶ 103; PSOF ¶ 103. His leave was granted retroactively from July 1, 2015 until September 22, 2015. DSOF ¶ 103; PSOF ¶ 103. Neither Salama, Yousef, nor Goldberg had any involvement with the decision to grant Plaintiff's FMLA leave. DSOF ¶ 105; PSOF ¶ 105.

Plaintiff reported feeling better in August and was cleared by his psychiatrist to return to work on August 31, 2015. DSOF ¶¶ 107-09; PSOF ¶¶ 107-09. On August 31, 2015, Plaintiff reported to the Rainbow headquarters office and met with Yousef and Goldberg. DSOF ¶ 112; PSOF ¶ 112. Plaintiff was informed of Rainbow's decision to terminate him during that meeting and was given a letter memorializing the termination. DSOF ¶ 113; PSOF ¶ 113.

The record reflects that prior to Plaintiff's accident, leave, and termination, Defendants reported experiencing issues with Plaintiff's job performance. For example, Yousef testified that "Union people long term with the company and people are complaining about the way [Plaintiff] speaks to them. The way he treats them and everything else . . . he was very fresh and I can say

mean in the way he talks to them undermining." DSOF ¶35; PSOF ¶ 35; Yousef Dep. Tr. 19:11-18, Dkt. 34-3. Salama testified that he felt disrespected by Plaintiff. DSOF ¶ 52; PSOF ¶ 52. Goldberg testified that "[o]n the occasions that [Goldberg] dealt with [Plaintiff] generally it was in connection with a complaint that [Goldberg] received from the union representative about something that went on in one of [Plaintiff's] stores or a complaint about [Plaintiff]" and that "most of [Goldberg's] dealings with [Plaintiff] would have related to his responding to complaints that [Goldberg] received from the union." *See* DSOF ¶¶ 36-37; PSOF ¶¶ 36-37; Goldberg Fact Dep. Tr. 7:12-19, Dkt. 34-4. Goldberg also testified to "a pattern of behavior by [Plaintiff] of not dealing well with people and yelling and screaming at people and just not behaving in the way that [Goldberg] would expect a manager to behave." DSOF ¶ 39; PSOF ¶ 39; Goldberg Fact Dep. Tr. 48:17-21.

A few additional examples are instructive and prove critical to the Court's analysis. First, in May 2015, a month before Plaintiff's slip and fall accident, a Rainbow Human Resources employee helped Salama with drafting a letter to the company regarding the Plaintiff. DSOF ¶ 67; PSOF ¶ 67. The letter read as follows:

May 4, 2015

Hazem [Yousef],

As you know I have been experiencing issues with Hatem [Plaintiff] for quite some time. His attitude towards me is very rude, offensive and insubordinate and violates the company standards of conduct. I have also gotten numerous complaints from his managers about the way he speaks and yells at them on the selling floor in front of other employees and customers. I do not need to tell you how unprofessional this type of behavior is and how it may expose us to employee relations issues.

Last Monday, you told me that you would take care of it, but that apparently never happened. Since then, I tried to overlook his actions but he had not contacted or replied to me once since the latest argument we had. This is destructive to business and we cannot operate like this. In all of my 30+ years with this company, I have never been treated so disrespectfully. I have been tolerant of this behavior for far too long. I suffer from a heart

condition and will not jeopardize my health for him. Since he was counseled on this subject in the past, I do not see any potential for change. I propose that you either transfer his district to another region or have him report to you directly.

Thank you.

Jack Salama

DSOF ¶ 68; PSOF ¶ 68. While Plaintiff largely disputes the truth of statements related to his poor performance, he does not dispute the fact that the letter was drafted in May 2015 as reflected above.

Second, on June 10, 2015, Goldberg and Salama spoke via telephone and Salama testified that he told Goldberg he was unable to tolerate Plaintiff's behavior and was "very frustrated." DSOF ¶ 75; PSOF ¶ 75. Goldberg made contemporaneous notes of the June 10, 2015 call. DSOF ¶ 77; PSOF ¶ 77. The notes reflect that Plaintiff and Salama were having problems and that Plaintiff "had 'yelled' at Yousef." *Id.*

Third, on June 15, 2015, Salama, Yousef, and Goldberg had a meeting at Rainbow's headquarters where "Goldberg recommended that Rainbow terminate [Plaintiff] because of his inappropriate behavior and insubordination." DSOF ¶ 78; PSOF ¶ 78. Yousef stated he wanted one week to consider the decision and the group agreed to reconvene on June 22, 2015. DSOF ¶ 78-79; PSOF ¶ 78-79. Goldberg made contemporaneous notes of the June 15, 2015 meeting. DSOF ¶ 80; PSOF ¶ 80. The notes are memorialized as follows:

6-15: Mtg w/Hazem [Yousef] & Jacques [Salama] –

Hazem: first Jacques got to point of not being able to deal w/Hatem [Plaintiff] – now its gotten out of hand and Hatem yelled at him – Insubordinate, can't be managed.

Discussed options. I reminded Hazem that Hatem always has been a problem – subject of complaints from Union & Union members.

**Decision to terminate – will discuss further next Monday**

DSOF ¶ 80; PSOF ¶ 80; Defs.' Mem. Ex. 8 at 3, Dkt. 26-8 (emphasis added). Again, while Plaintiff largely disputes any assertions related to poor performance, he does not dispute the fact that these notes were contemporaneously recorded on June 15, 2015 as reflected above.

Fourth, on June 22, 2015, Salama, Yousef, and Goldberg met again at the headquarters office. DSOF ¶ 81; PSOF ¶ 81. Defendants state that "[d]uring that meeting Yousef agreed with Goldberg's recommendation to terminate Plaintiff" and that "**Rainbow finalized the decision to terminate Plaintiff on June 22, 2015**." DSOF ¶¶ 81-82 (emphasis added). Goldberg made contemporaneous notes of the meeting which were memorialized as follows:

> Follow up on 6/22 – **finalized decision to terminate for insubordination to Hazem & Jacques**. Plan is to have Jacques meet him at store or outside of store and advise him of decision. At this point, no severance but will consider after he is termed. Likely day to tell him is later this week or at the latest on Monday 6/29.

DSOF ¶ 83; Defs.' Mem. Ex. 8 at 3-4 (emphasis added). Salama had planned to notify Plaintiff of the termination on June 29, 2015, as Goldberg suggested, but was not able to do so because Plaintiff called in sick that day. DSOF ¶ 85. Plaintiff disputes this assertion and responds that he "worked for Defendants on June 29, 2015" and through July 1, 2015. PSOF ¶¶ 85, 211-14.

After admitting to the contents and fact of the June 15, 2015 meeting notes, and admitting the fact that the June 22, 2015 meeting occurred, Plaintiff denies the contemporaneous notes made of that meeting, giving no stated reason for the denial except, "**Deny**. Defendants had only decided to suspend Mr. Rabo at least as of July 9, 2015," PSOF ¶ 83, which blandly ignores the contents of that note and its contemporaneous making.

This expedient denial is ostensibly based upon an email dated July 9, 2015 ("July 9 email") from Salama to Goldberg as follows:

> <u>Salama</u>: I know you're on vacation just to ask you when Hatem [Plaintiff] calls me and I tell him he's suspended till he comes to office so you can speak to him he's gonna ask me what's the reason he's suspended what should I tell him please let me know[.] Ty

6

> Goldberg: Insubordination to his supervisors

Opp. Mem. Ex. 7, Dkt. 34-7.

Without parsing Salama's meaning of "suspend" in the July 9 email and Goldberg's "insubordination" adjacent to "terminate" in the June 22, 2015 notes, the incontrovertible and undisputable fact is that the final decision to terminate Plaintiff was made on June 22, 2015, a month before the Plaintiff's FMLA request was submitted to the Defendants. His first doctor's note was on June 29, 2015 following his slip and fall accident on June 24 or June 25, 2015. Plaintiff emailed to Salama and Yousef the doctor's note excusing him from work on that day until July 13, 2015. On July 12, he emailed to them another doctor's note dated July 11, 2015, advising of his inability to work until July 27, 2015. His FMLA leave was granted, which has been indicated, on July 28, 2015. And his request was granted from July 1, 2015 to September 22, 2015. The final decision to terminate him on June 22, 2015 predated the first suggestion of the possibility of a FMLA claim on June 29, 2015 – the first relevant doctor's visit.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating that no genuine dispute of material fact exists for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Once this burden is met, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts…. the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Id.* (citations omitted) (emphasis in original).

The Court is compelled to draw all reasonable inferences in favor of the nonmoving party, *see id.* at 587, and a genuine dispute exists if a reasonable jury could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted," and "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247, 249-50 (citations omitted) (emphasis in original). As a result, "the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth concrete particulars showing that a trial is needed." *Zagaja v. Village of Freeport*, 2019 WL 3253062 at *2 (E.D.N.Y. July 19, 2019) (citing *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations and citation omitted)).

## II. Rabo's FMLA Retaliation Claim

Retaliation claims under the FMLA are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case by demonstrating: "1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Id.* A plaintiff cannot logically establish an inference of retaliation where the evidence shows that his employer made a final decision to terminate him before the protected activity commenced. *See, e.g., Wilkinson v. Nord Anglia Educ. Ltd.*, 2019 WL 3430662, at *10 (S.D.N.Y. July 30, 2019) ("It is well established that an adverse employment action cannot serve as the basis for a retaliation claim if the action was set in motion before a plaintiff engaged in protected activity.").

8

Here, Plaintiff argues that a causal inference of retaliation is established through temporal proximity – namely, that he was terminated on the day he returned from leave. *See* Opp. Mem. at 6-7. But this claim is belied by the timeline of the record and is insufficient to establish a prima facie case of FMLA retaliation where the only reasonable conclusion supported by the record evidence is that Rainbow made a final decision to terminate Plaintiff before his FMLA leave commenced.

Plaintiff's attempts to reinterpret or explain away this fact with the July 9 email are patently meritless. Nothing in that email contradicts the June 22, 2015 meeting notes or otherwise suggests that Defendants had abandoned their decision to terminate him. To the contrary, the July 9 email shows Salama asking Goldberg for guidance as to how to handle communicating with Plaintiff after they had decided to terminate him and before he returned from his medical leave on July 13, 2015.

The Plaintiff's claim upon which his case is based—that he was terminated in retaliation for filing a FMLA request—is blatantly belied by indisputable facts and is indisputably false. The decision to terminate him was finalized on June 22, 2015 – before he even had his slip and fall accident. No reasonable juror could conclude otherwise. Accordingly, there is no genuine issue of material fact regarding Plaintiff's prima facie FMLA retaliation claim and summary judgment must be granted.

### III. Rabo's Remaining Claims

Plaintiff withdrew his remaining claims in his opposition to Defendants' motion for summary judgment. Opp. Mem. at 1 n.1. These claims are accordingly dismissed with prejudice and the Court denies Defendants' motion for summary judgment on Plaintiff's remaining claims as moot.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part as moot. The Clerk of the Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

/s/
I. Leo Glasser, U.S.D.J.

Brooklyn, New York
June 29, 2021